**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Thomas V. Seman,

Plaintiff,

v.

FMC Corporation Retirement Plan for Hourly Employees; FMC Corporation; United Defense Limited Partnership, being sued as United Defense L.P.,

Defendants.

Civil No. 01-209 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

John M. Nichols, Esq. and Gregory R. Merz, Esq., Gray, Plant, Mooty, Mooty & Bennett, 3400 City Center, 33 South Sixth Street, Minneapolis, Minnesota 55402, on behalf of Plaintiff.

Steven L. Severson, Esq. and Deborah A. Ellingboe, Esq., Faegre & Benson, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, Minnesota, 55402-3901, on behalf of Defendants.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on February 8, 2002, pursuant to cross motions for summary judgment. In the Complaint, Plaintiff alleges that Defendants violated § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), by denying his claim for disability retirement benefits. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is denied, Defendants' Motion for Summary Judgment is granted, and Plaintiff's Amended Complaint is dismissed with prejudice.

## Background

Plaintiff Thomas Seman is a former employee of Defendant FMC Corporation ("FMC"). From October, 1968, through September, 1997, Mr. Seman worked for FMC, primarily in the

MAR 0 7 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD MAR 0 7 2002
DEPUTY CLERK

blast and heat treatment division, treating metal parts for naval armaments. Because of the nature of his work environment, Mr. Seman was subject to periodic medical testing, including yearly pulmonary function tests, at FMC's on-site medical facility.

In 1987, Mr. Seman was diagnosed with asthma. Over time, Mr. Seman's condition became more severe. Mr. Seman contends that, in 1996, an FMC physician named Dr. Lee advised Mr. Seman that his condition was worsening such that he should begin to consider disability benefits. In 1997, Mr. Seman saw an independent pulmonary specialist named Dr. Kelmenson who determined that his condition had worsened further over the last several months. By a letter addressed to Mr. Seman and dated February 27, 1997, Dr. Kelmenson wrote:

> As you know, you have had worsening problems with your asthma for the past two months which was documented both by physical exam and spirometric changes. As you also know, you have been working in the heat treating area where you have been exposed to fumes of burning oil, oil vapors, and possibly other dust or fumes. This is clearly dangerous to your health in view of your asthma. Confirming what I have told you today, you should not work in this area ever again because of your asthma problem. As a general rule you should not be exposed to dust, smoke, or fumes of any sort, either at work or away from work, as all of these can worsen your asthma.

By a "return to work" slip of the same date, Dr. Kelmenson indicated that Mr. Seman's inability to return to work was "permanent" and that he was to have "no exposure to dust, fumes, or chemical, or smoke," due to an "asthma flair-up."

Mr. Seman provided FMC with both Kelmenson documents. FMC completed two forms dated February 28, 1997, indicating in one that no work was available in light of Dr. Kelmenson's exposure restriction and in the other that Mr. Seman's status of "restricted activity" was extended until his next medical appointment in March 1997. Mr. Seman contends that he then met unsuccessfully with his direct supervisor and the general manager of the Armament Systems Division to negotiate an alternative assignment and that, on the few occasions when he

returned to his previous position, he ended up at urgent care due to an asthma flare-up. In response to Dr. Kelmenson's opinion, FMC maintains that it provided Mr. Seman with a respirator so that he could perform his job. According to a June 4, 1997, letter from a FMC nurse to Dr. Kelmenson, Mr. Seman reported that he derived "great benefit" from the respirator. By that same letter, FMC sought Dr. Kelmenson's opinion as to whether a reassignment within the Heat Treatment Division or to another division of the company was a viable option given Mr. Seman's health.

On June 6, 1997, Mr. Seman filed an age and disability discrimination complaint with the EEOC and the Minnesota Department of Human Rights. On September 22, 1997, Mr. Seman and FMC settled the claim, resulting in a payment to Mr. Seman in the amount of $70,000, 18 months of COBRA health insurance, and attorney's fees. FMC also agreed to provide outplacement services and a reference to potential employers. The parties negotiated a document entitled "Settlement Agreement and General Release" ("the Agreement") and dated September 19, 1997, which stated that: "[b]oth Seman and FMC desire to settle fully and finally any and all differences existing between them with respect to Seman's employment with FMC and termination thereof." Among the numerous terms set forth in the Agreement is the following:

> 6. Seman's Thrift and Pension accounts will be handled in accordance with plan provisions and normal distribution schedules using the resignation date of September 18, 1997."

In addition, the Agreement included the following release:

> 8. In consideration of these commitments by FMC, Seman agrees to release, acquit, and forever discharge FMC, its officers, employees, directors, successors, and assigns from any and all claims, demands, actions, causes of action, obligations, liabilities, agreements, proceedings, and judgments in any way incurred or arising out of any matter or thing whatsoever prior

> to the effective date of Seman's termination, whether known or unknown, fixed or contingent, liquidated or unliquidated, and whether arising in tort, statute or contract, including without limiting the generality of the foregoing, to any claim arising under the Age Discrimination in Employment Act of 1967, as amended, the Americans with Disabilities Act, the Civil Rights Act of 1964, as amended, the Minnesota Human Rights Act, or any other law, statute or ordinance affecting your employment or termination from FMC. Specifically excluded from this release is the worker's compensation claims Seman has filed against FMC.

By a later provision, the parties further acknowledged their intent "to make this release as broad and as general as the law permits with respect to Seman's employment relationship and/or termination from FMC."

Subsequent to the settlement and his termination, on or about April 12, 1999, Mr. Seman applied for disability retirement benefits under the UDLP Employees Pension Plan ("the Plan"). With respect to disability benefits, the Plan states that:

> The plan pays a disability retirement benefit if you are totally and permanently disabled after you have at least 10 years of credited service as of the date when your total and permanent disability has lasted for at least 26 weeks (and before your normal retirement date).
>
> You are considered totally and permanently disabled if you are physically or mentally unable to perform any job at the company's plant or a comparable job for another employer and if a qualified physician believes that this condition will continue for life.

Section 5(a) of the FMC Corporation Retirement Plan for Hourly Employees, the pension plan agreement between FMC and the union of which Seman was a member, states that: "A Participant who has attained Disability Retirement Eligibility and who separates from active employment because of Total and Permanent Disability may elect in writing to receive a Disability Retirement Benefit."[1]

---

[1] Schedule E of the FMC Coporation Retirement Plan for Hourly Employees incorporates the same language cited above from the UDLP Employees Pension Plan.

In support of his initial claim, Mr. Seman submitted the following evidence: (1) the April 3, 1998, determination by the Social Security Administration that Mr. Seman was totally and permanently disabled as of September 12, 1997; (2) the March 20, 1998, determination by the Department of Veterans Affairs that Mr. Seman was 30 percent disabled from post-traumatic stress disorder with major depressive components, a service-related disability; (3) the afore-mentioned 1997 letter from Dr. Kelmenson; and (4) the final page of a letter from Mitchell G. Kaye, M.D., which in part expresses the opinion that a claim of "60% permanent-partial disability to the whole body . . . would appear to be an appropriate determination."[2]

By a letter, dated June 8, 1999, FMC denied Mr. Seman's claim on the following grounds: (1) that, pursuant to the terms of the settlement agreement, Mr. Seman voluntarily left the employ of FMC rather than *because of* his disability, as required under the Plan; and (2) that he was not totally and permanently disabled as defined by the Plan.[3] By letters dated July 13 and 15, 1999, Mr. Seman requested reconsideration of his disability benefits claim and sought to schedule an appointment with a FMC physician to confirm his disability status, as FMC directed him to do in the letter denying his claim.

After several months with no response from FMC, Mr. Seman's counsel wrote a letter on November 18, 1999, requesting an update on the status of Mr. Seman's claim and a copy of the summary plan description to which Mr. Seman was subject and expressing a willingness to

---

[2] This letter appears to be related to Mr. Seman's claim for workers' compensation which he settled on August 7, 2000, on a finding of 60% permanent-partial disability of the body based on the health of his lungs.

provide further documentation of Mr. Seman's disability, if necessary.[4] Mr. Seman contends that by a December 23, 1999, telephone conversation between his counsel and Ronald Willock, Director of Benefits for FMC/United Defense, Mr. Willock advised that it was unlikely that another medical examination would be necessary and that the remaining question would be whether Mr. Seman was "totally and permanently disabled" at the time of his termination. Mr. Seman contends that Mr. Willock advised Plaintiff's counsel that there was no requirement that Mr. Seman's termination be "because of" his disability. Upon the request of FMC, made January 11, 2000, Plaintiff's counsel submitted a package of Mr. Seman's medical records on April 20, 2000.

Pursuant to the Plan, a written decision on an appeal is to be issued within 60 days, unless special circumstances exist, such as the need for a hearing, in which case the claimant is to receive notice of the extension within 60 days and a decision within 120 days. FMC has yet to issue a decision on the appeal.[5] Plaintiff filed the instant action alleging: (1) Count I: Violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), such that he is entitled to benefits under the Plan; and (2) Count II: Breach of Fiduciary Duty, such that he is entitled to a "retroactive restoration of benefits" under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and "appropriate

---

[4] Apparently, upon the writing of the November 18, 1999, letter, Plaintiff's counsel was in possession of a copy of the UDLP Employees Pension Plan and was requesting a copy of the FMC Corporation Retirement Plan for Hourly Employees.

[5] While not determinative of any issue in this case, the Court finds FMC's failure to issue a timely response to Mr. Seman's appeal or even to acknowledge its flagrant delay to be a deplorable disregard for the nature of Mr. Seman's issues and the value that fairness and process can lend to an otherwise unwelcome result. It is the hope of this Court that FMC is committed to treat its employees under the Plan by the fairness and process promised in its text.

equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Bother parties now seek summary judgment on both of Plaintiff's claims.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

## 2. Issues

### a. In General

The parties are in agreement that this case should be resolved by summary judgment. Defendants base their argument for summary judgment on the following contentions: (1) that Mr. Seman released his claim for disability retirement benefits by the 1997 settlement agreement; or, in the alternative, (2) that Mr. Seman did not leave the employ of FMC *because of* his disability and that he was not totally and permanently disabled upon his termination, thus rendering the decision of the plan administrator to deny benefits as reasonable. To the contrary, Plaintiff maintains that the 1997 release did not pertain to Mr. Seman's current benefits claim and that Mr. Seman was totally and permanently disabled upon his termination from FMC, rendering the decision to deny Mr. Seman's claim as arbitrary and capricious and thus reversible.

In addition to Defendants' focus on the Settlement Agreement and the decision of the administrator, Defendants also direct the Court to Mr. Seman's representations to FMC and the relevant agencies that he was either willing and able to continue working or that he left the employ of FMC for reasons other than or in addition to his alleged disability. Defendants maintain that such representations are completely inconsistent with Mr. Seman's current position and that judicial estoppel or some other equitable doctrine should necessarily preclude Mr. Seman from now asserting that he was and is totally and permanently disabled. While the Court appreciates Defendants' position and takes note of Mr. Seman's seemingly vacillating position, the Court does not find such statements to be necessarily inconsistent and declines to dismiss Mr. Seman's current claims on that basis alone. That being said, however, the Court finds the release in this case to be determinative.

**b. The Release**

Generally, Minnesota courts look favorably upon settlement and find a release of claims to be presumptively valid. *Sorenson v. Coast-to-Coast Stores, Inc.*, 353 N.W.2d 666, 669 (Minn. Ct. App. 1984). In determining whether a release is valid, a court is guided by basic rules of contract construction. *Lancaster v. Buerkle Buick Honda Co.*, 809 F.2d 539, 541 (8th Cir.), *cert. denied*, 482 U.S. 928, 107 S. Ct. 3212, 96 L. Ed. 2d 699 (1987). The Court must consider the following factors: (1) the clarity of the language; (2) whether the release was supported by adequate consideration; (3) whether the release purports to settle claims unknown at the time of execution; (4) whether the challenging party was permitted to change language in the release; and (5) whether counsel was present during negotiation of the release. *Somora v. Marriott Corp.*, 812 F. Supp. 917, 921 (D. Minn. 1993) (citations omitted). Simply because a party fails to appreciate the legal ramifications of a release does not render it invalid, providing the party is aware of its terms and makes no allegation of fraud. *Id.* (citing *Dolgner v. Dayton Co.,* 235 N.W. 275, 277 (1931)).

The Court finds the language of the release between the parties to be clear. The Court finds the most relevant language to be that Mr. Seman agreed to release "any and all claims . . . in any way incurred or arising out of any matter or thing whatsoever prior to the effective date of Seman's termination, whether known or unknown . . . and whether arising in tort, statute or contract . . .." The language of the release is straightforward and all-encompassing. This reading is buttressed by the subsequent provision acknowledging that the parties intended that the release be interpreted "as broad and as general as the law permits." Moreover, the fact that the parties agreed that Mr. Seman's worker's compensation claims were to be explicitly excluded from the release reinforces the straightforward reading that "any and all" other claims were thereby

released. Mr. Seman's claim for disability retirement benefits, without dispute, arises from his employment with FMC and, as such, is precluded by the clear language of the release.

With respect to the second factor outlined above, Mr. Seman received $70,000, 18 months of COBRA benefits, and attorney's fees as consideration for his release of claims. "The sufficiency of consideration rests not on the amount received but upon receipt by a party of something he was not previously entitled to." *Sorenson*, 353 N.W.2d at 670. The Court makes no judgment as to the sufficiency in amount of the settlement but does find that Mr. Seman received money and other benefits to which he was not otherwise necessarily entitled. As such, the Court finds that Mr. Seman received sufficient consideration for his release of claims.

With respect to the fourth and fifth factors, Mr. Seman was represented by counsel during the negotiation of the release. Indeed, Mr. Seman's counsel negotiated explicit language to reserve his right to seek worker's compensation benefits. While the release also expressly purports to release claims unknown at the time of execution, the nature of Mr. Seman's current claim for disability benefits indicates that the facts supporting such claim were known to him at the time of his settlement and termination. In addition, Mr. Seman does not contend that the release was procured by fraud or any other such exceptional circumstances. In light of each of the factors and the absence of any exceptional circumstances, the Court finds the release to be valid and thus preclusive of Mr. Seman's current claim for disability benefits.

Plaintiff's argument that the provision pertaining to the distribution of pension benefits somehow excepts Mr. Seman's current claim from the effect of the release is without merit. The provision relied upon by Plaintiff reads as follows: "Seman's Thrift and Pension accounts will be handled in accordance with plan provisions and normal distribution schedules using the resignation date of September 18, 1997." First, the plain language of the provision refers to the

distribution of Seman's accounts, *i.e.*, his existing accounts. At the time Mr. Seman signed the settlement agreement, he did not have a disability benefits retirement account. Second, and arguably even more significant, the provision contains no clear language relating to the release, and the release contains no clear language exempting Mr. Seman's future benefits claims, unlike the explicit exemption for worker's compensation claims. Mr. Seman could have negotiated language that would have reserved his right to assert future benefits claims, but for whatever reason, no such language was negotiated. Accordingly, the Court finds the clear language of the Agreement and its release to preclude the assertion of any such claim at this time, and, as such, Plaintiff's claim shall be dismissed with prejudice.

**c. The Administrator's Decision**

Given the Court's interpretation of the release, the Court does not need to reach the issue of whether the decision to deny Mr. Seman's claim for disability benefits was reasonable or arbitrary. Nonetheless, the Court will now evaluate the administrator's decision.

Under ERISA, a plan beneficiary has a right to judicial review of a benefits determination by a plan administrator. 29 U.S.C. § 1132(a)(1)(B). Where a plan provides the administrator with "discretionary authority to determine eligibility for benefits," the standard of judicial review is for abuse of discretion, *i.e.*, whether a decision is arbitrary or capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 946, n.4 (8th Cir. 2000) (finding the "arbitrary and capricious" standard to be equivalent of "abuse of discretion" standard). In evaluating for an abuse of discretion, a court looks to whether an administrator's fact-based decision is supported by substantial evidence. *Donaho v. FMC Corp.*, 74 F.3d 894, 900 (8th Cir. 1996). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and requiring

"more than a scintilla but less than a preponderance." *Id.* (citations omitted). It is not necessary that the administrator's decision be the *only* decision that could be reached, but rather that the determination was possible and reasonable. *Donaho*, 74 F.3d at 899 (explaining proper reading of "reasonable" under ERISA is "if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision"). In the course of its evaluation, a court may consider only that evidence that was before the plan administrator when the decision being challenged was made. *Sahulka v. Lucent Techs., Inc.*, 206 F.3d 763, 769 (8th Cir. 2000).

Pursuant to Paragraph 9 on Page 18 of the Benefits Plan, "United Defense has discretionary authority to construe and interpret the terms of the Plan including, but not limited to, deciding all questions of eligibility of any benefits under the Plan." Given the discretionary authority afforded to the administrator by this provision, the Court now reviews the decision to deny benefits for an abuse of discretion. First, with respect to the administrator's decision that Mr. Seman did not terminate his employment with FMC *because of* his disability, the Court finds such a narrow interpretation of the facts and the language of the Plan to be almost blind to the obvious. The very facts giving rise to Mr. Seman's claims leading to settlement, *i.e.*, his health and the alleged discrimination in response to it, are also the facts giving rise to what he now claims is a total and permanent disability. While the Court recognizes that Mr. Seman settled his earlier claims and that settlements often are reached for reasons other than or in addition to the asserted claims, the Court finds it unreasonable to ignore that the settlement would not have been reached had Mr. Seman's health not been as it was. That being said, however, even if Mr. Seman could have established that he left the employ of FMC because of his disability, by his active and informed negotiation, Mr. Seman elected the settlement agreement and release as the avenue

through which he would settle any claims relating to his employment, including the disability he now claims.

With respect to the administrator's decision, the real issue is whether and to what extent Mr. Seman's health interfered with his ability to work, thus rendering him totally and permanently disabled upon his termination from FMC. It is the second basis that the administrator gave, *i.e.*, that Mr. Seman was not totally and permanently disabled, that is properly the focus of the Court's review. As stated in the Plan, "[a claimant is] considered totally and permanently disabled if [he is] physically or mentally unable to perform any job at the company's plant or a comparable job for another employer and if a qualified physician believes that this condition will continue for life."

When the administrator first denied Mr. Seman's claim, the administrator had limited information to consider. The Court finds that the administrator reasonably concluded that Mr. Seman was not totally and permanently disabled. The summarized conclusions of the VA, the SSA, and the doctor examining Mr. Seman for worker's compensation each indicated a finding of disability by a percentage of 60% or less, making no explicit finding that any such percentage rendered Mr. Seman *totally disabled.* While the Court does not intend to minimize any finding of disability, the Court must also be mindful of the significance of a finding of partial disability and the corresponding abilities of those individuals who struggle but work successfully with such disabilities. Both parties agree that the SSA's conclusion that Mr. Seman was unable to perform any job in the work force was not binding on the administrator. *See, e.g., Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1452 n.5 (11th Cir. 1997); *Chandler v. Raytheon Employees Disability Trust*, 53 F. Supp. 2d 84, 91 (D. Mass. 1999), *aff'd*, 229 F.3d 1133 (1st Cir. 2000) (tbl.), *cert. denied,* 531 U.S. 1114 (2001) (citing *Doyle v. Paul Revere Life Ins. Co.*, 144

F.3d 181, 184 (1st Cir.1998)). Moreover, the medical letter by Dr. Kelmenson specifically cautioned Mr. Seman from working in the heat treating area. While Mr. Seman may have established by the evidence that his health had resulted in significant limitations in his ability to continue in his job in the heat treating area, the Court finds that the agency determinations were not binding on the administrator and that it was reasonable for the administrator to have determined that Mr. Seman had not established that he was unable to perform any job at FMC or at a comparable employer, and thus was not totally and permanently disabled under the Plan.

The review of the administrator's decision cannot stop there, and it becomes complicated given the administrator's failure to respond to Mr. Seman's appeal in a timely manner. However, even in light of the additional evidence that Mr. Seman submitted upon appeal, the Court finds that it is reasonable for the administrator to deny Mr. Seman disability retirement benefits under the Plan. The additional medical documents do not change the agency-specific determinations of Mr. Seman's disability. Rather, the additional documents provide more of an explanation of how the determinations were reached. In addition, the FMC medical documentation and records that Mr. Seman could not be reassigned to another position do not dictate the conclusion that Mr. Seman could not perform any position at FMC, but instead that no alternative work assignments were available at the time. By its analysis, the Court does not find that the evidence before the administrator and that presented on appeal require a conclusion that Mr. Seman was not totally and permanently disabled, however, the Court does find that it was reasonable for the administrator to determine as such.

Nonetheless, even if the only reasonable conclusion the administrator could have drawn was that Mr. Seman left the employ of FMC because he was totally and permanently disabled, Mr. Seman forfeited his right to bring a claim for disability retirement benefits by settling his

claims against FMC and releasing any and all other claims, such as the one he pursues now. Accordingly, Mr. Seman's current claims against FMC are dismissed with prejudice.

For the reasons stated, **IT IS HEREBY ORDERED** THAT:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 13) is **DENIED**;

2. Defendants' Motion for Summary Judgment (Doc. No. 12) is **GRANTED**; and

3. Plaintiff's Amended Complaint (Doc. No. 7) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 7, 2002

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*