# United States Court of Appeals
FOR THE EIGHTH CIRCUIT

---

No. 02-1883

---

Thomas V. Seman,

Appellant,

v.

FMC Corporation Retirement Plan for Hourly Employees; FMC Corporation; United Defense, Limited Partnership,

Appellees.

---

American Association of Retired Persons,

Amicus Curiae on Behalf of Appellant.

CV01-209 DWF/AJB

Appeal from the United States District Court for the District of Minnesota.

[PUBLISHED]

---

Submitted: December 13, 2002
Filed: July 1, 2003

---

Before HANSEN,[1] Chief Judge, LAY and BYE, Circuit Judges.

---

[1] The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

FILED 7-24-03
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

---

HANSEN, Circuit Judge.

Thomas V. Seman appeals the district court's adverse grant of summary judgment in his lawsuit alleging wrongful denial of disability retirement benefits under the Employee Retirement Income Security Act (ERISA). The district court concluded that Seman previously had given up his claim for benefits when he settled an age- and disability-discrimination charge against his employer, and alternatively, that the retirement plan administrator did not abuse its discretion by denying Seman's claim for benefits. For the reasons discussed below, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

I.

Seman worked for the FMC Corporation and its successor, the United Defense Limited Partnership (collectively, FMC) from 1968 through 1997. Throughout his employment, he participated in the FMC Corporation Retirement Plan for Hourly Employees and its successor, the United Defense Limited Partnership Employees Pension Plan (collectively, the Plan), a funded defined-benefit plan governed by ERISA. FMC is the Plan's administrator and fiduciary. Regarding disability retirement benefits for a plan participant "who has attained Disability Retirement Eligibility and who separates from active employment because of Total and Permanent Disability," the Plan provides:

> [A] Participant who becomes totally and permanently disabled, either mentally or physically, shall be eligible to receive a Disability Retirement benefit, provided the following conditions exist:
>
> > (1) Such disability is certified as total and permanent by a physician selected by the Company or by the Participant and confirmed by a physician selected by the other party.

> (2) Such disability shall have existed for a period of at least 26 consecutive weeks.
>
> (3) The Participant, on or before the expiration of the 26 week period referred to in (2), has accrued at least 10 years of credited service.
>
> . . . .
>
> "Total and Permanent Disability" shall mean disability of such nature as to prevent a Participant from performing and discharging the duties of any job at the Company's plant or a comparable job for another employer and that such disability is likely to be permanent.

Seman worked primarily in the heat treatment areas of the plant, where metal items were treated with chemicals and raised to high temperatures in ovens and furnaces. FMC regularly administered pulmonary-function tests to such employees, and in 1996, the staff nurse detected a marked decrease in Seman's lung function. The nurse referred him to an FMC physician, Dr. Lee, who suggested that Seman begin thinking about taking disability retirement. In early 1997, Seman was seen by a pulmonary specialist, Dr. Kelmenson, who imposed permanent work restrictions prohibiting Seman from being in contact with dust, fumes, chemicals, or smoke. Seman promptly furnished Dr. Kelmenson's diagnosis and work restrictions to his FMC supervisor and the FMC staff nurse, both of whom told him that there was no work that satisfied the restrictions available at the plant. Seman made repeated efforts to be placed in an FMC job that would satisfy the work restrictions, to no avail. In June 1997, he filed a discrimination charge against FMC with the Equal Employment Opportunity Commission and the Minnesota Department of Human Rights, alleging age discrimination, disability discrimination, and retaliation.

Seman and FMC reached a settlement. Seman agreed to resign effective September 18, 1997, and withdraw his discrimination charge. In exchange, FMC agreed to pay him $70,000 "as full and complete settlement of all compensation to which Seman may be eligible or claim to be eligible," pay him for his accrued vacation time, pay $5,000 toward his attorney fees, pay $9,450 toward eighteen

months of health insurance premiums, and provide up to ninety days of outplacement assistance. Regarding Seman's retirement benefits, the agreement provided that "Seman's Thrift and Pension accounts will be handled in accordance with plan provisions and normal distribution schedules using the resignation date of September 18, 1997." The agreement described FMC's release from liability as follows:

> Seman agrees to release, acquit and forever discharge FMC, its officers, employees, directors, successors and assigns from any and all claims, demands, actions, causes of action, obligations, liabilities, agreements, proceedings and judgments in any way incurred or arising out of any matter or thing whatsoever prior to the effective date of Seman's termination, whether known or unknown, fixed or contingent, liquidated or unliquidated, and whether arising in tort, statute or contract, including without limiting the generality of the foregoing, to any claim arising under the Age Discrimination in Employment Act of 1967, as amended, the Americans with Disabilities Act, the Civil Rights Act of 1964, as amended, the Minnesota Human Rights Act, or any other law, statute or ordinance affecting your employment or termination from FMC. Specifically excluded from this release is [sic] the worker's compensation claims Seman has filed against FMC.
>
> . . . .
>
> Both Seman and FMC acknowledge it is the intent to make this release as broad and as general as the law permits with respect to Seman's employment relationship and/or termination from FMC, and that this Agreement shall be construed in accordance with the laws of the state of Minnesota relating to contracts performed in Minnesota.
>
> This Agreement constitutes the sole agreement or contract, express or implied, governing Seman's employment with and termination from FMC.

Seman subsequently applied for and received Social Security disability benefits. The Social Security Administration concluded that he had become totally disabled on September 12, 1997. (The existing record does not disclose whether his disability was deemed to be physical, mental, or both.) Seman also applied for and received Veterans Administration disability benefits. The Department of Veterans

Affairs concluded that he had become 30% disabled on September 15, 1997, due to posttraumatic stress disorder stemming from his military service. Additionally, Seman applied for and received workers' compensation benefits. FMC agreed that his diminished pulmonary function constituted a 60% permanent partial disability.

Seman then applied for disability retirement benefits under the Plan. He supported his application with copies of the Social Security Administration's finding of total disability, the Department of Veterans Affairs' finding of partial disability, and the diagnosis of permanent partial disability by Dr. Kaye, the doctor FMC had used in connection with Seman's workers' compensation claim.

FMC, acting in its capacity as Plan administrator, denied Seman's claim for two reasons. First, FMC concluded that he had not separated from employment because of his disability, but rather had resigned pursuant to the settlement agreement. Second, FMC concluded that Seman had not shown he was totally and permanently disabled as defined by the Plan. Seman timely appealed to FMC's review panel, offered to be examined by a physician of FMC's choice, and submitted medical records. After more than 18 months had passed without a decision by the review panel--well beyond the Plan's 60-day deadline for cases in which no appeal hearing is held and its 120-day deadline for cases in which an appeal hearing is held--Seman sued in federal court for wrongful denial of disability retirement benefits. As noted above, the district court granted the defendants' motion for summary judgment, concluding that the earlier settlement agreement barred Seman's claim for benefits, and alternatively, that FMC had not abused its discretion by denying Seman's claim.

## II.

We review de novo the district court's grant of summary judgment to the defendants, viewing the record in the light most favorable to Seman. See Phillips-Foster v. UNUM Life Ins. Co., 302 F.3d 785, 794 (8th Cir. 2000).

The district court first concluded that, as part of the 1997 settlement of his age- and disability-discrimination charge, Seman had given up any future claim for disability retirement benefits. We review de novo the interpretation of the settlement agreement. See Hogan v. Raytheon Co., 302 F.3d 854, 856-57 (8th Cir. 2002).

A settlement agreement that releases legal claims in exchange for severance benefits may be enforced under ERISA. See Mead v. Intermec Tech. Corp., 271 F.3d 715, 717 (8th Cir. 2001). However, we scrutinize such a release "to ensure the fiduciary did not obtain the release in violation of its duties to the beneficiary." See Leavitt v. N.W. Bell Tel. Co., 921 F.2d 160, 162 (8th Cir. 1990). One of the factors we examine, which we deem to be the dispositive factor in the case before us, is "the clarity of the release language." See id.

While the language of the release is certainly broad--referring to "any and all claims . . . in any way incurred or arising out of any matter or thing whatsoever prior to" September 18, 1997, and acknowledging the parties' "intent to make this release as broad and as general as the law permits with respect to Seman's employment relationship and/or termination from FMC"--it is equally clear that the release was not without exceptions. One exception, all parties agree, is that Seman retained his claim to workers' compensation. Likewise, we conclude from the language of the settlement agreement that Seman retained his claim to disability retirement benefits.

Despite the broad wording of the release, we are faced with this passage regarding Seman's retirement benefits: "Seman's Thrift and Pension accounts will be handled in accordance with plan provisions and normal distribution schedules using the resignation date of September 18, 1997." We think that the best reading of this language is that with respect to his pension rights, including his right to a disability retirement benefit, Seman would be treated like any other employee who separated from FMC on September 18, 1997, i.e., Seman did not give up any retirement benefits by releasing FMC from liability for his discrimination charge. When construing any

contract--let alone a contract between a fiduciary and a beneficiary--Minnesota law requires courts to give meaning to all of the contract provisions and to avoid an interpretation that leads to a harsh result. See Advantage Consulting Group, Ltd. v. ADT Sec. Sys., Inc., 306 F.3d 582, 585 (8th Cir. 2002). If FMC meant to abrogate Seman's disability retirement benefits while leaving intact his ordinary retirement benefits, as it now argues it did, FMC was obligated to use language clearer than the oblique phrase "in accordance with plan provisions and normal distribution schedules" because the Plan in fact includes provisions and schedules governing disability retirement benefits.

Having concluded that Seman did not sign away his future claim to disability retirement benefits when he settled his discrimination charge in 1997, we now turn to the district court's alternative reasoning.

III.

The district court concluded in the alternative that, even if Seman had not released his claim for disability retirement benefits when he settled his discrimination charge, FMC did not abuse its discretion by denying Seman's claim on the basis that he had not shown he was totally and permanently disabled.[2] We review de novo the district court's determination that abuse of discretion was the proper standard of review to apply to FMC's denial of benefits. See Phillips-Foster, 302 F.3d at 794.

The Plan grants FMC discretionary authority to decide all questions of eligibility for benefits, which is ordinarily enough to limit judicial review to the deferential abuse-of-discretion standard. See Shelton v. Contigroup Co., 285 F.3d

---

[2] The district court rejected FMC's contention that Seman had separated from employment pursuant to the settlement agreement rather than because of his disability, characterizing this position as "almost blind to the obvious." We agree.

640, 642 (8th Cir. 2002). However, if an ERISA plan gives its administrator discretion to decide certain issues and the administrator fails to render a decision on those issues, judicial review of those issues is de novo. See Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1328 (8th Cir. 1995). Seman argues that the review panel's failure to act on his appeal is equivalent to the type of failure to render a decision we recognized in Mansker, entitling him to de novo review.

We have previously held that a review panel's failure to act on an appeal does not raise the standard of review from abuse of discretion to de novo unless its failure raises serious doubts about the result reached by the plan administrator. See McGarrah v. Hartford Life Ins. Co., 234 F.3d 1026, 1031 (8th Cir. 2000). Serious doubts were not raised in McGarrah because the plan administrator made a thorough investigation before denying the participant's application, and the participant did not submit any additional medical evidence in his appeal to the review panel. See id.

We think that the instant case differs from McGarrah in this regard: Seman submitted much more medical evidence in connection with his appeal to FMC's review panel than he attached to his initial application for disability retirement benefits, raising serious doubts about FMC's denial of his application for benefits. To his application, Seman attached only a single page showing the Social Security Administration's finding of total disability, a single page showing the Department of Veterans Affairs' finding of partial disability, and a single page showing Dr. Kaye's diagnosis. In contrast, Seman submitted much of the underlying medical evidence to the review panel in support of his appeal, including reports from five doctors and related test results. Importantly, the existing record indicates that FMC did not have the medical evidence before it when it denied Seman's initial application for benefits.

De novo review should therefore be applied to FMC's denial of Seman's application for benefits, if immediate judicial review is indeed the correct remedy. At first blush, however, Shelton seems to suggest a different remedy. In Shelton, the

plan administrator failed to render a decision on the participant's initial application for disability benefits. Rather than allow immediate judicial review of the participant's claim, we remanded the matter to the plan administrator to render a decision on the application for benefits. See Shelton, 285 F.3d at 642, 644.

We think that McGarrah and Shelton must be harmonized as follows. When a plan administrator fails to render any decision whatsoever on a participant's application for benefits, it leaves the courts with nothing to review under any standard of review, so the matter must be sent back to the administrator for a decision. When a plan administrator denies a participant's initial application for benefits and the review panel fails to act on the participant's properly filed appeal, the administrator's decision is subject to judicial review, and the standard of review will be de novo rather than for abuse of discretion if the review panel's inaction raises serious doubts about the administrator's decision. The instant case falls into the latter category.

Having determined that FMC's denial of Seman's application for benefits should be reviewed de novo, we conclude that such review should be conducted in the first instance by the district court, rather than by this court. We believe that remanding this case to the district court is the wiser approach because the review of the plan administrator's denial of benefits is a highly fact-intensive inquiry which may, in the district court's sound discretion, be based on evidence beyond that presented to the administrator. See Mansker, 54 F.3d at 1328.

IV.

Accordingly, we reverse the judgment of the district court and remand this case to the district court for de novo review of FMC's denial of Seman's application for disability retirement benefits. Seman's motion to supplement the appellate record, which was previously ordered taken with the case, is hereby granted.

A true copy.

Attest: Michael E. Gans

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.