**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Thomas V. Seman,

Plaintiff,

v.

FMC Corporation Retirement Plan for Hourly Employees; FMC Corporation; United Defense Limited Partnership, being sued as United Defense L.P.,

Defendants.

Civil No. 01-209 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

John M. Nichols, Esq. and Gregory R. Merz, Esq., Gray, Plant, Mooty, Mooty & Bennett, 3400 City Center, 33 South Sixth Street, Minneapolis, Minnesota 55402, on behalf of Plaintiff.

Steven L. Severson, Esq. and Deborah A. Ellingboe, Esq., Faegre & Benson, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, Minnesota, 55402-3901, on behalf of Defendants.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on January 16, 2004, pursuant to cross-motions for summary judgment. In the Complaint, Plaintiff alleges that Defendants violated § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), by denying his claim for disability retirement benefits. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is granted in part and denied in part; Defendant's Motion for Summary Judgment is denied.

**Background**

Plaintiff Thomas Seman is a former employee of Defendant FMC Corporation ("FMC"). From October 1968, through September 1997, Seman worked for FMC, primarily in the blast and heat treatment division, treating metal parts for naval armaments. Because of the nature of his work environment, Seman was subject to periodic medical testing, including yearly pulmonary function tests, at FMC's on-site medical facility.

In 1987, Seman was diagnosed with asthma. Over time, Seman's condition became more severe. Seman contends that in 1996, an FMC physician named Dr. Lee advised Seman that his condition was worsening such that he should begin to consider disability benefits. In 1997, Seman saw Dr. Kelmenson, an independent pulmonary specialist, who determined that Seman's condition had worsened over the last several months. By a letter addressed to Seman and dated February 27, 1997, Dr. Kelmenson wrote:

> As you know, you have had worsening problems with your asthma for the past 2 months which was documented both by physical exam and spirometric changes. As you also know, you have been working in the heat treating area where you have been exposed to fumes of burning oil, oil vapors and possibly other dust or fumes. This is clearly dangerous to your health in view of your asthma. Confirming what I have told you today, you should not work in this area ever again because of your asthma problem. As a general rule, you should not be exposed to dust, smoke, or fumes of any sort, either at work or away from work, as all of these can worsen your asthma.

By a "return to work" slip of the same date, Dr. Kelmenson indicated that Seman's inability to return to work was "permanent" and that he was to have "no exposure to dust, fumes or chemicals or smoke," due to his asthmatic condition.

Seman provided FMC with both Kelmenson documents. FMC completed two forms dated February 28, 1997, indicating in one that no work was available in light of Dr. Kelmenson's exposure restriction and in the other that Seman's status of "restricted activity" was extended until his next medical appointment in March 1997. Seman contends that he then met with his direct supervisor and the general manager of the Armament Systems Division to attempt to negotiate an alternative assignment and that this attempt was unsuccessful. Seman further asserts that on the few occasions when he returned to his previous position, he ended up at urgent care due to his asthmatic condition. FMC maintains that, in response to Dr. Kelmenson's opinion, it provided Seman with a respirator so that he could perform his job. According to a June 4, 1997, letter from an FMC nurse to Dr. Kelmenson, Seman reported that he derived "great benefit" from the respirator. By that same letter, FMC sought Dr. Kelmenson's opinion as to whether a reassignment within the Heat Treatment Division or to another division of the company was a viable option given Seman's health.

On June 6, 1997, Seman filed an age and disability discrimination complaint with the EEOC and the Minnesota Department of Human Rights. On September 22, 1997, Seman and FMC settled the claim, resulting in a payment to Seman in the amount of $70,000, 18 months of COBRA health insurance, and attorney fees. FMC also agreed to provide outplacement services and a reference to potential employers. The parties negotiated a document entitled "Settlement Agreement and General Release" ("the Agreement") dated September 19, 1997, which stated that: "[b]oth Seman and FMC desire to settle fully and finally any and all differences existing between them with respect to Seman's employment with FMC and termination thereof."

On September 19, 1997, Seman again visited with Dr. Kelmenson regarding his condition. Seman informed Dr. Kelmenson that he had left his position at FMC. Dr. Kelmenson reported that Seman's asthmatic condition had grown worse. Dr. Kelmenson also noted in Seman's chart that Seman "would probably use a short burst of prednisone at this point, but because of legal issues, it would be useful to prove that he does improve away from work again and he is not in severe difficulties."

Following his departure from FMC, Seman applied for Social Security Disability ("SSD") benefits. On April 3, 1998, Seman was notified that he had been awarded SSD benefits. In the process of applying for SSD benefits, Seman was examined by a psychiatrist, Dr. Alford S. Karayusuf. Dr. Karayusuf found that Seman suffered from "[g]eneralized anxiety disorder with depression" and "elements of post traumatic stress disorder." The Social Security Administration ("SSA") found that Seman was totally and permanently disabled as of September 12, 1997.

In addition to applying for SSD benefits, Seman also applied for disability benefits from the Department of Veteran's Affairs ("DVA"). A psychological examination conducted as part of Seman's application for benefits concluded that Seman was suffering from "[p]ost-traumatic stress disorder with major depressive components." On March 28, 1998, the DVA found Seman was 30% disabled based solely on his mental condition.

Seman also pursued a claim for Workers Compensation benefits for his work-related illness sustained while at FMC. By a stipulation agreement dated August 7, 2000, Seman settled his claim for 60% permanent-partial disability of the body as a whole related to his lung condition. The 60%

disability assessment was consistent with the findings of the physician retained by FMC with regard to Seman's Workers Compensation claim, Dr. Mitchell Kaye.

Subsequent to the settlement and his termination, on or about April 12, 1999, Seman applied for disability retirement benefits under the UDLP Employees Pension Plan ("the Plan"). With respect to disability benefits, the Plan states that:

> The plan pays a disability retirement benefit if you are totally and permanently disabled after you have at least 10 years of credited service as of the date when your total and permanent disability has lasted for at least 26 weeks (and before your normal retirement date).
>
> You are considered totally and permanently disabled if you are physically or mentally unable to perform any job at the company's plant or a comparable job for another employer and if a qualified physician believes that this condition will continue for life.

(Affidavit of Deborah A. Ellingboe (hereinafter "Ellingboe Aff."), ¶ 12, Ex. K ("Employee Manual"), at 9.) Section 5(a) of the FMC Corporation Retirement Plan for Hourly Employees, the pension plan agreement between FMC and the union of which Seman was a member, states that: "A Participant who has attained Disability Retirement Eligibility and who separates from active employment because of Total and Permanent Disability may elect in writing to receive a Disability Retirement Benefit."[1]

In support of his initial claim, Seman submitted the following evidence: (1) the April 3, 1998, determination by the SSA that Seman was totally and permanently disabled as of September 12, 1997; (2) the March 20, 1998, determination by the DVA that Seman was 30 percent disabled from post-traumatic stress disorder with major depressive components, a service-related disability; (3) the

---

[1] Schedule E of the FMC Corporation Retirement Plan for Hourly Employees incorporates the same language cited above from the UDLP Employees Pension Plan.

aforementioned 1997 letter from Dr. Kelmenson; and (4) the final page of a letter from Dr. Kaye, which in part expresses the opinion that a claim of "60% permanent-partial disability to the whole body . . . would appear to be an appropriate determination."[2]

By a letter dated June 8, 1999, FMC denied Seman's claim on the following grounds: (1) that, pursuant to the terms of the settlement agreement, Seman voluntarily left the employ of FMC rather than *because of* his disability, as required under the Plan; and (2) that he was not totally and permanently disabled as defined by the Plan. By letters dated July 13 and 15, 1999, Seman requested reconsideration of his disability benefits claim and sought to schedule an appointment with a FMC physician to confirm his disability status as FMC had directed him to do in the letter denying his claim.

After several months with no response from FMC, Seman's counsel wrote a letter on November 18, 1999, requesting an update on the status of Seman's claim and a copy of the summary plan description to which Seman was subject.[3] In this letter, Seman's counsel also expressed a willingness to provide further documentation of Seman's disability, if necessary. Seman contends that by a December 23, 1999, telephone conversation between his counsel and Ronald Willock, Director of Benefits for FMC/United Defense, Mr. Willock advised that it was unlikely that another medical examination would be necessary and that the remaining question would be whether Seman was "totally and permanently disabled" at the time of his termination. Seman contends that Mr. Willock advised

---

[2] This letter is related to Mr. Seman's claim for workers' compensation which he settled on August 7, 2000, on a finding of 60% permanent-partial disability of the body based on the health of his lungs.

[3] Apparently, upon the writing of the November 18, 1999, letter, Plaintiff's counsel was in possession of a copy of the UDLP Employees Pension Plan and was requesting a copy of the FMC Corporation Retirement Plan for Hourly Employees.

Plaintiff's counsel that there was no requirement that Seman's termination be "because of" his disability. Pursuant to FMC's request, made January 11, 2000, Plaintiff's counsel submitted a package of Seman's medical records on April 20, 2000.

Pursuant to the Plan, a written decision on an appeal is to be issued within 60 days, unless special circumstances exist, such as the need for a hearing, in which case the claimant is to receive notice of the extension within 60 days and a decision within 120 days. When FMC failed to issue a decision on Seman's appeal, Seman filed the instant action alleging: (1) Count I: Violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover benefits under the Plan; and (2) Count II: Breach of Fiduciary Duty, to recover a "retroactive restoration of benefits" under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

On February 8, 2002, this Court heard cross-motions for summary judgment. On March 7, 2002, this Court granted FMC's Motion for Summary Judgment based on the Court's determination that the Agreement and its release precluded assertion of any claims for future benefits. In the alternative, the Court found that the administrator's decision that Seman was not totally and permanently disabled was reasonable under an abuse of discretion standard. Based on the Court's findings, the suit was dismissed with prejudice.

Seman appealed this Court's decision to the Eighth Circuit Court of Appeals. In an opinion dated July 1, 2003, the Eighth Circuit found that Seman did not sign away future claims to disability retirement benefits when he settled his discrimination charge. *See Seman v. FMC Corp. Retirement Plan for Hourly Employees*, 334 F.3d 728 (8th Cir. 2003). The Eighth Circuit also found that the

failure of the plan administrator to render any decision on Seman's appeal of his denial of benefits required the Court to conduct a *de novo* review of the evidence as opposed to reviewing the administrator's decision under an abuse of discretion standard. *See id.* at 733. Because this Court had applied the incorrect standard of review, the Eighth Circuit remanded the case to this Court for a *de novo* review of FMC's denial of Seman's application for disability retirement benefits, including the additional medical documents submitted by Seman. *See id.* at 733-34.

**Discussion**

**1. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth

specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. The ERISA Claim**

The Eighth Circuit has directed this Court to review Seman's application for benefits *de novo*. Under a *de novo* review, the court is required to review the entire file available to the administrator at the time the administrator denied the plan participant disability coverage. *See Donatelli v. Home Ins. Co.*, 992 F.2d 763, 764 (8th Cir. 1993). The court may also allow the parties to introduce additional evidence. *See id.* However, a court "should not exercise this discretion absent good cause to do so." *Id.*

**A. Seman's Prior Statements**

FMC asserts the Court should consider Seman's prior sworn statements regarding his ability to perform the essential duties of his job. FMC contends that Seman represented in his EEOC charge that he was able to perform his job duties and that he maintained this position until he negotiated a settlement of his EEOC claim with FMC. FMC asserts that Seman's representations in the EEOC matter are inconsistent with the representations he is now making to this Court and that these inconsistencies are a sufficient basis upon which this Court can grant summary judgment. Seman, on the other hand, asserts that the Court did not find this argument by FMC to be persuasive when it was presented to the Court during the first summary judgment hearing on this matter, and therefore, Seman asks that the Court reject this assertion again. Seman also points out that his own state of mind regarding his ability to work is not binding on the Court as it is not a medical opinion.

In its prior Order, the Court took note of Seman's seemingly vacillating position on his ability to perform work, but also found that the statements present in his EEOC claim were not necessarily inconsistent. Upon further review of the matter, the Court finds that Seman's statements regarding his ability to work are not determinative as to the outcome of this case. Like many people who have worked for a number of years at a job, Seman appears to have had difficulty in coming to terms with the fact that his disability inhibited his ability to perform his job duties. The Court finds that the statements present in the EEOC claim are not a sufficient basis upon which to grant FMC summary judgment.

**B. Total and Permanent Disability**

FMC asserts that the reports from Seman's examining physicians in the supplemented administrative record do not conclude that Seman was totally disabled and unable to work. Instead, FMC contends that the medical reports in the supplemented administrative record state that although Seman had work restrictions related to his lung problems and post-traumatic stress disorder, he remained capable of working. In contrast, Seman asserts that the medical reports contained in the supplemented administrative record establish that as a result of his asthmatic condition, he was totally and permanently disabled as defined by the Plan.

The Court disagrees with FMC's assessment of the medical evidence available in the supplemented administrative record and finds that the evidence establishes that Seman was totally and permanently disabled as defined by the Plan. Dr. Kelmenson, Seman's primary care physician, initially reported that Seman had "significant" asthma problems. Based on his assessment of Seman's health, Dr. Kelmenson issued the permanent work restrictions requiring that Seman not be exposed to "dust,

smoke or fumes of any sort." (Ellingboe Aff., ¶ 9, Ex. H.) Several months later, FMC's staff nurse, Kathleen Cross, prepared an interoffice memo in which she stated that Dr. Kelmenson had informed her that Seman's "asthma is under good control at present." (*Id.*, ¶ 14, Ex. M.) Dr. Kelmenson later examined Seman after Seman had left FMC and reported that Seman's asthma had grown worse. (*See id.*, ¶ 18, Ex. Q.) Dr. Kelmenson's notes state that Seman was not in severe difficulties at the time of the appointment, but it is difficult to tell whether Dr. Kelmenson is referring to Seman's physical condition in general or Seman's asthmatic condition once Seman was away from the environment at the FMC facility. (*See id.*) Regardless of the meaning given to Dr. Kelmenson's comment, the medical opinions of Dr. Kelmenson from the time of the initial permanent work stoppage order to his final conclusion that Seman's condition had grown worse support Seman's position that he was permanently and totally disabled and incapable of further work in FMC's heat treatment area.

The second physician to evaluate Seman's medical condition was Dr. Kaye. Dr. Kaye examined Seman regarding Seman's application for worker's compensation benefits and found that Seman's claim of a 60% permanent-partial disability was appropriate. (*See* Ellingboe Aff., ¶ 3, Ex. B.) FMC points out that Dr. Kaye never reported that Seman was 100% disabled and that Dr. Kaye reported that Seman's condition was "relatively stable" while he served as health and safety officer. (*See id.* at 3.) However, Dr. Kaye also reported that Seman's condition was exacerbated related to his exposure at work, that Seman should be "restricted from any future exposures to potential chemicals, vapors, fumes, dusts, or other respiratory irritants," and that even an aggressive treatment plan might not improve Seman's condition in the future. (*See id.* at 3 and 6.) While the Court finds that Dr. Kaye's report may call into question the ability of Seman to serve in positions outside of FMC's

heat treatment area, the report issued by Dr. Kaye supports Seman's assertion that he suffered from a serious permanent disability that certainly required that Seman not work in FMC's heat treatment area.

The final medical opinions in the supplemented administrative record regarding Seman's health were issued by physicians that were retained by the SSA and the DVA to consider Seman's applications for benefits administered by the two agencies. The reports issued by these physicians find that Seman suffers from post-traumatic stress disorder. As a result of the post-traumatic stress disorder, Dr. Alford Karayusuf reports that Seman would be capable of working with others, but only in situations that involve "brief, superficial interactions with fellow workers, supervisors, and the public." The Court finds that these reports do not speak to Seman's asthmatic condition, but place further limitations on Seman's ability to work in an alternative position within FMC.

Based on the medical reports contained in the supplemented administrative record, the Court finds that Seman was totally and permanently disabled as defined by the Plan when he left FMC pursuant to the Agreement. Dr. Kelmenson's reports all speak to an asthmatic condition that was significant and that required Seman to permanently avoid any work in the heat treatment area at FMC's facility. Dr. Kaye reported a similar diagnosis and plan of treatment in his report. The remaining medical reports in the supplemented administrative record do not speak directly to Seman's asthmatic condition, but do place further restrictions on Seman's ability to work as an employee of FMC. Based on the reasons stated above, the Court finds that Seman was totally and permanently disabled as defined by the Plan.

**C. Alternative Job Placement At FMC**

While the Court finds that Seman is entitled to summary judgment on the issue of whether his disability was permanent and total, the Court does not find that Seman is entitled to summary judgment on the issue of whether he was unable to perform any job at FMC's facility. The Court rejects outright FMC's assertion that Seman was physically able to continue at his position in FMC's heat treatment area, but finds conflicting evidence in the supplemented administrative record and in the affidavits submitted by the parties concerning Seman's ability to work in an alternative job setting at FMC.[4] Specifically, FMC asserts that Seman could have served as a health and safety representative at FMC. The medical reports in the supplemented administrative record lend some credence to this assertion. However, Seman asserts that he was persistent in his efforts to find alternative work at FMC and that he was told by FMC's management and health services staff that he was unfit for work anywhere in FMC's facility. The Court finds that this conflicting evidence creates a genuine issue of material fact. Because the evidence in the supplemented administrative record is in conflict regarding alternative work placements, the Court denies summary judgment to both parties on this issue.

**D. 26-Week Waiting Period**

FMC asserts that even if Seman could show that he was totally and permanently disabled under the Plan, Seman is not entitled to disability benefits because Seman was not disabled for 26 weeks

---

[4] Seman asks the Court not to consider the affidavits submitted by Gary Mefford and Kathleen Cross because Seman believes that no good cause exists for the affidavits' belated submission. FMC believes the Court should consider these affidavits as they provide a response to affidavits FMC objected to as belated when this suit was before the Court on the original cross-motions for summary judgment. In the interests of fairness and because good cause exists for the consideration of these affidavits, the Court has considered all of Seman's affidavits as well as those put forward by FMC.

prior to leaving FMC's employ. FMC points to language contained in the employee handbook that entitles an employee to a disability retirement benefit only when the employee has "at least 10 years of credited service as of the date when your total and permanent disability has lasted for at least 26 weeks . . . ." (Ellingboe Aff., ¶ 12, Employee Manual at 9.) In addition, FMC points out that an explanation of an employee's vested benefits in the employee handbook does not discuss disability retirement benefits in the context of employees that leave FMC's employ. FMC asserts that the absence of language regarding disability retirement benefits is evidence that the Plan is not meant to pay out these benefits to employees who leave FMC prior to fulfilling the 26-week waiting period. Finally, FMC asserts that Seman does not qualify for the benefits because his attendance records show that he worked at his position in the heat treatment area up until the time he left FMC.

Seman notes that FMC cites language in the employee handbook, not the Plan itself. Seman then cites the following language from the Plan regarding retirement disability benefits:

> [A] Participant who becomes totally and permanently disabled, either mentally or physically, shall be eligible to receive a Disability Retirement benefit, provided the following conditions exist:
>
> . . .
>
> (2) Such disability shall have existed for a period of at least 26 consecutive weeks.

(Ellingboe Aff., ¶ 15, Ex. N ("the Plan") at Schedule E.) Under the language of the Plan, Seman asserts that he is a "Participant" because he has not died or received all of the benefits due him under the Plan. *See* Plan Section 2(c). Thus, Seman contends that he is eligible for the benefits because he is totally and permanently disabled and has been so for a 26-week period. Seman further contends that

even if the Plan required him to be disabled for 26 weeks prior to leaving FMC, he qualifies for the benefit because he did little or no work while he was employed at FMC from February 1997 to September 1997.

The Court finds that no genuine issue of material fact exists as to whether Seman has met the 26-week requirement set out under the Plan. First, the Court finds that Seman was a "Participant" of the Plan as he had not died or otherwise received all of the benefits due him under the Plan. Second, the Court finds that the plain language of the Plan does not require the 26-week waiting period to expire while the participant was in FMC's employ. The Plan only requires that a participant, who has 10 years of credited service, be totally and permanently disabled and that "[s]uch disability shall have existed for a period of at least 26 consecutive weeks." While the employee handbook certainly makes clear that the participant must wait out the 26 weeks while in FMC's employ, the Plan itself makes no mention of such a requirement. Because the Plan governs, the Court finds that the 26-week period need not have entirely lapsed before Seman left FMC's employ. Thus, Seman meets the 26-week requirement because his disability began before he left FMC, and his condition did not change in the period that followed.

**Conclusion**

Based on the length of time over which this controversy has extended and the narrow issue that remains to be resolved, the Court believes it is in the best interests of the parties to negotiate a resolution of this dispute among the parties. As the parties may already be aware, Magistrate Judge Arthur J. Boylan is available to assist in the negotiation of a settlement should the parties find such services to be helpful. If the Court may be of assistance in this matter, the parties should feel free to

contact Lowell Lindquist, Calendar Clerk for Judge Donovan W. Frank, at 651-848-1296, or Kathy Thobe, Calendar Clerk for Magistrate Judge Arthur J. Boylan, at 651-848-1210.

For the reasons stated, **IT IS HEREBY ORDERED** THAT**:**

1. Plaintiff's Motion for Summary Judgment (Doc. No. 37) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

a. Thomas Seman's Motion for Summary Judgment as to the issue of whether he suffered a permanent and total disability is **GRANTED;**

b. Thomas Seman's Motion for Summary Judgment as to whether he fulfilled the 26-week waiting period requirement set forth in the Plan is **GRANTED;** and

c. Thomas Seman's Motion for Summary Judgment as to the issue of whether there was any position at FMC that he would be able to work in is **DENIED.**

2. Defendants' Motion for Summary Judgment (Doc. No. 40) is **DENIED**.

Dated: February 19, 2003

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court